The Chancellor.
John A. Johnson, of the township of Independence, in the county of Sussex, by deed dated the seventh of February, eighteen hundred and twenty, conveyed to his brother, Job Johnson, a lot of land situated in that township, containing forty acres. The deed is absolute on its face, and states the consideration to be eight hundred and five dollars. It is, however, the real character of the transaction, that creates the dispute. The complainant charging in his bil, that the deed was designed as a mere security for the loan of money, and that a defeasance was executed by the grantee at the time he received it, by which a power of redemption in the nature of a mortgage was given to the grantor. The defendant, on the other hand, insists by his answer, that it was a sale of the entire interest, absolute in its character, and without any agreement whatever for redemption or repurchase of the premises. Much of the evidence in the cause is taken on this point, and I am entirely satisfied that the writing marked exhibit B, on the part of the complainant, providing for a reconveyance of the property on certain terms, was executed by Job Johnson, at the time hé took the deed, and is to be considered as part and parcel of the same contract. The two papers bear the same date, appear to have been drawn up by the same person, and the handwriting of Job Johnson to the defeasance is incontestibly proven. All the witnesses agree that the handwriting is Job Johnson’s, and some of them are men of business and competent judges. The subscribing witness, it is true, while he admits that he signed the paper, declares that Job Johnson did not sign it in his presence, and had not signed it when he placed his name to it. This may be so, and yet, in a transaction of twenty years standing, it is not safe to trust to the memory upon a subject like that. There is another witness, (Phebe Quick,) who declares that she saw Job Johnson and the witness sign the paper: that the witness did not see Johnson sign the paper, but came in directly after and affixed his name to it. It is most probable, the witness has some indistinct idea that he did not see Johnson sign the paper, but be that as it may, it is clearly mani *375 est that Johnson, did sign it, for his handwriting seems to have been well known, and is testified to by many and very respectable witnesses, by men who had opportunities of knowing his Handwriting, and there is not one person brought to deny the genuineness of the signature. While it is a settled rule of law, that the subscribing witness, if within the reach of the process of the court, must be called to testify; yet when he is so called, the party is not bound by his oath alone, should he deny the execution, but he may call other witnesses and prove the handwriting of the party to the instrument.
The writing being thus proven, what is its character ? The complainant calls it a defeasance, in the nature of a mortgage, while the defendants consider it a contract for repurchase upon certain terms. It is often difficult to decide this question; the distinctions are nice and depend on the peculiar circumstances of the case. I incline to the opinion strongly, that the true and just construction of this instrument is, to consider it a contract for repurchase. The sale was made at a specified price, and is absolute on its face; the possession was taken immediately by the purchaser; it does not appear to have been given for a loan of money, but in satisfaction, and that in part only, of a previous indebtedness. The conduct of the parties show this to Lave been their view, for Job Johnson went on and made valuable improvements on the land, built a barn and other buildings, planted an orchard, and put up stone fences in the presence of John A. Johnson, who was his brother, and -without any question being raised by him respecting his right to do so. It appears too, that in eighteen hundred and thirty-four, John A. Johnson took the benefit of the insolvent act, and in the schedule of his property, made under oath, no mention is made of this. The sale to the defendant was made on the seventh of February, eighteen hundred and twenty, and he went into possession within a very short time thereafter, perhaps a month or two, and acted as the owner, making essential improvements in the property, until the sixth of July, eighteen hundred and thirty-nine, (a period of more than nineteen years,) when the *376 sheriff of Sussex sold to the complainant for fifty dollars, all the right of John A. Johnson, his father-in-law, in the said forty acre lot, by an execution issued on an old judgment in favor of Peter Apgar, against the said John A. Johnson and Christopher Little, entered in the supreme court in May term, eighteen hundred and twenty-four. The defendant gave a full price for the land when he bought, and any present increased value, is derived from the improvements he placed upon it, and the gradual rise of property m that part of the country. The complainant, it will be observed, is not a creditor of John A. Johnson, nor has he any transfer from him of his right, but claims as a voluntary purchaser for a nominal price, to redeem the land by paying off anything that may remain due on the consideration of eight hundred and five dollars, paid by the defendant, after deducting the rents, issues and profits. It is plain from the bill, that the complainant’s belief is, that the rents, issues and profits of the land, and which arise mainly from the improvements placed upon it, will pay off the whole debt, and leave him the property clear.
There is nothing in the case that should prompt me to aid in any such result. After so long a time has passed by, after the value of the premises have been increased by the labor and money of the defendant, I should with very great reluctance deprive him of the reward due to his industry, and bestow it on one having no higher claim than that presented by the complainant. In any event, even if the party himself was seeking to redeem, he should, under the circumstances of this case, pay for all the improvements which the defendant has made on the property.
But the complainant has no right to redeem this property. He acquired no right by his purchase at the sheriff’s sale, that can be recognized in this court. The title to this land passed to the defendant’s testator in eighteen hundred and twenty, and with it the possession also. The judgment under which the sale took place, was not entered until eighteen hundred and twenty-four, four years afterwards. There was then nothing *377 which could be sold on an execution at law; the title was gone from the defendant in execution, and the possession also, and nothing remained but a mere equity.
By the English law, the equity of redemption, even if the mortgagor remain in possession, cannot be sold on execution at law, but in this county it is otherwise. The mortgage is deemed with us a mere security for a debt, and the property may be sold by execution, subject to the lien. It may well be doubted, however, whether this is so when the mortgagee is in possession, for if the mortgagor surrenders that, the position of things is materially changed. The entry by the mortgagee or a foreclosure, puts a new aspect on the rights of the parties. Before entry or foreclosure, it is held that the equity of redemption may be sold on execution against the mortgagor, but not after. Then the legal title in the mortgagee becomes the subject of a sale by execution against him. This is the doctrine recognized in Jackson v. Willard, 4 John. 42; Collins v. Torry, 7 John. 282; 4 Kents Com. 160, 1.
But whatever uncertainty there might be in the case of a mortgage, I think there can be none in a mere contract like the present, for a repurchase of the premises; that is a clear naked equity, and cannot be sold by execution at law. It comes within the principle of the cases in this court of Disborough v. Outcalt and others, Saxton, 301; of Vancleve v. Groves and others; and of Den v. Steelman, 5 Halsted, 193, in the supreme court of this state.
The complainant’s bill must be dismissed, with costs.